UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-62062-CANNON/MCCABE

ANTWAN WALKER,

    Petitioner,

v.

MARK S. INCH, SECRETARY,
DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon Antwan Walker's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") (DE 1), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 14). Petitioner raises three grounds for relief:

1. The state courts violated his clearly established Fifth and Fourteenth Amendment due process rights by summarily denying his motion for postconviction relief without the benefit of an evidentiary hearing;

2. State prosecutors violated his clearly established Fifth and Fourteenth Amendment due process rights by failing to disclose exculpatory information prior to trial, specifically, the fact that one of the State's witnesses had expressed doubts about her eyewitness identification of Petitioner; and

3. Petitioner received ineffective assistance of trial counsel, in violation of his clearly established Sixth Amendment rights, because his trial counsel failed to depose State witnesses and failed to perform an adequate factual investigation of the case.

As set forth below, the undersigned **RECOMMENDS** that the Petition be **DENIED** because Petitioner failed to fully exhaust his claims and because the claims fail on the merits.

I.  **BACKGROUND**

A.  **Trial Proceedings**

On May 13, 2010, a state court grand jury indicted Petitioner on two counts of first-degree murder (R. at 16).[1] The charges stemmed from a fight in a nightclub parking lot on April 10, 2010, which escalated into a shooting, leaving two people dead (R. at 13). After a five-day jury trial in July 2015, the jury found Petitioner guilty of one count of first-degree murder and one count of second-degree murder (R. at 52-53). On August 24, 2015, the trial court adjudicated Petitioner guilty and sentenced him to life imprisonment (R. at 55-62).

B.  **Direct Appeal**

On September 1, 2015, Petitioner appealed his conviction and sentence to Florida's Fourth District Court of Appeal ("DCA") (R. at 70). Petitioner raised two arguments: (1) the trial court erred by refusing to allow his counsel to reference in opening statement, or to question witnesses about, a silver gun that police found four hours after the murder, within two miles of the crime scene; and (2) the trial court erred by refusing to allow Petitioner to cross examine State witness on facts that supported his "defense of others" theory (R. at 89).

The Fourth DCA per curium affirmed the judgment and sentence on May 25, 2017. *See Walker v. State*, 226 So. 3d 846 (Fla. 4th DCA 2017). Petitioner did not seek further review with the Florida Supreme Court or with the United States Supreme Court (DE 1 at 3). The Fourth DCA issued its mandate on June 23, 2017 (R. at 155). Petitioner's conviction and sentence became final on August 23, 2017.

---

1 The State's exhibits, which are found in DE 7-1, will be cited as "R." and to the electronic page number. The transcript of the criminal proceedings, which are found at DE 8-1, will be cited as "T." and to the transcript page number.

### C. Postconviction Proceedings

On July 28, 2017, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (R. at 157-64, 172-79). The motion sought a new trial based on newly discovered evidence in the form of two witness affidavits (R. at 173). The first, signed by one of the State's key eyewitnesses at trial (hereafter "J.B."), attested that she had expressed doubts to prosecutors and law enforcement about identifying Petitioner as the shooter (R. at 176-77). The other affidavit, signed by a newly discovered witness (hereafter "A.O."), attested that she witnessed the parking lot fight and saw a "stocky" male with "long dreads hanging down his back" with a gun in his hand "near the guy who was laying on the ground" (R. at 178). Petitioner was not stocky, nor did he have dreads, at the time of the shooting (DE 1 at 11; DE 13 at 6). Petitioner argued the new evidence would "probably lead to an acquittal if the case is retried" (R. at 173).

On December 7, 2018, the state trial court denied the Rule 3.850 motion "for reasons set forth in the State's Response," without holding an evidentiary hearing (R. at 186). The State's response, in turn, argued that the new evidence would be unlikely to produce an acquittal because, among other reasons, it contradicted the evidence offered at trial (R. at 181-84).

Petitioner appealed to the Fourth DCA on December 11, 2018 (R. at 189). Petitioner argued the trial court erred in denying the Rule 3.850 motion, but he did not specifically argue the failure to afford an evidentiary hearing on the motion violated his Fifth or Fourteenth Amendment due process rights (R. at 206). The Fourth DCA per curium affirmed the trial court's order on September 12, 2019. *See Walker v. State*, 279 So. 3d 713 (Fla. 4th DCA 2019). Petitioner did not seek further review with the Florida Supreme Court or with the United States Supreme Court (DE 1 at 6). The Fourth DCA issued its mandate on October 11, 2019 (R. at 264).

This Petition followed.

**II.   ANALYSIS**

Petitioner brings this action pursuant to 28 U.S.C. § 2254, which provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The statute further provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2).

Here, Petitioner alleges three grounds for relief:

1. The state courts violated his clearly established Fifth and Fourteenth Amendment due process rights by summarily denying his motion for postconviction relief without the benefit of an evidentiary hearing;

2. State prosecutors violated his clearly established Fifth and Fourteenth Amendment due process rights by failing to disclose exculpatory information prior to trial, specifically, the fact that one of the State's witnesses had expressed doubts about her eyewitness identification of Petitioner; and

3. Petitioner received ineffective assistance of trial counsel, in violation of his clearly established Sixth Amendment rights, because his trial counsel failed to depose State witnesses and failed to perform an adequate factual investigation of the case.

(DE 1 at 7, 9-10).  The Court will address procedural issues before turning to the merits.

### A. Exhaustion

A habeas petitioner must exhaust state court remedies before filing a federal habeas petition. 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, a habeas petitioner must "fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corrs.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (cleaned up). While a petitioner need not "cite book and verse on the federal constitution," *Duncan v. Henry*, 513 U.S. 364, 365 (1995), he must "alert[ ] the [state] court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). He accomplishes this only when a "reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Kelley v. Sec'y Dep't of Corrs.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004). Once a petitioner has "fairly presented" his federal claim to the state trial and appellate courts, he must then "present that exact same claim to the federal courts – adjacent claims or nominally similar claims do not make the cut." *Green v. Sec'y, Dep't of Corrs.*, 28 F.4th 1089, 1158 (11th Cir. 2022) (citing *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

Petitioner argues he exhausted ground one, but concedes he did not exhaust grounds two or three. The Court disagrees as to ground one. The undersigned has reviewed Petitioner's direct review briefs (R. at 79-101, 128-51) and his Rule 3.850 motion and appellate briefs (R. at 172-79, 196-24, 242-60). Based on this review, Petitioner did not "fairly present" to the state courts the issue raised in ground one. To be sure, Petitioner appealed the denial of his Rule 3.850 motion, but he did not argue the failure to afford him an evidentiary hearing violated his federal constitutional rights. As such, Petitioner did not give the state courts a fair opportunity to address this issue. *See Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) ("[T]o exhaust

state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.").

Moreover, Petitioner's claims are now procedurally barred from further state court review on grounds one, two, or three. *See Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("When it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless judicial ping-pong and just treat those claims now barred by state law as no basis for federal habeas relief.") (cleaned up). As a result, Petitioner's claims are procedurally barred from federal habeas review absent a showing of "cause and prejudice," or "fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The Court addresses these criteria below.

### 1. Cause

"Cause requires a showing of some external impediment preventing counsel from constructing or raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (cleaned up); *Roberts v. Singletary*, 794 F.Supp. 1106, 1123 (S.D. Fla. 1992) ("The requisite cause element is not precisely defined, but ordinarily requires a showing that some objective factor external to the defense impeded counsel's efforts to construct or raise a claim.") (cleaned up). The following objective factors, for example, qualify: (1) interference by officials that makes compliance impracticable; (2) a showing that the factual or legal basis for a claim was not reasonably available to counsel; and (3) constitutionally ineffective assistance of counsel. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

As to ground one, Petitioner makes no argument to support a finding of cause. As such, the Court finds no cause to excuse this procedural default. *See Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1161 (11th Cir. 2020) (affirming finding of procedural default where

6

petitioner made "no argument that he can show cause and prejudice sufficient to excuse the default of [his claim]").

As to ground two, Petitioner points to ineffective assistance of counsel on the part of his postconviction lawyer for failing to raise a *Brady* violation as part of his Rule 3.850 motion (DE 13 at 4-10). As a general rule, ineffective assistance of *postconviction* counsel cannot satisfy the "cause" requirement because the Sixth Amendment does not guarantee the right to postconviction counsel. *See Coleman*, 501 U.S. at 752; *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) ("[N]egligence on the part of a prisoner's post-conviction counsel does not constitute cause or excuse the procedural default of a claim in state court."). Petitioner cites *Martinez v. Ryan*, 566 U.S. 1 (2012), which recognizes a narrow exception to this rule, namely, that ineffective assistance of postconviction counsel can constitute "cause" where the deficient performance of postconviction counsel results in a prisoner's procedural default of an underlying claim *for ineffective assistance of trial counsel*. On its face, *Martinez* does not apply to cure defaults of *other* constitutional claims, such as due process *Brady* violations. *See Gore*, 720 F.3d at 816 ("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel."). As such, the Court finds no cause to excuse the procedural default of ground two.

As to ground three, alleging ineffective assistance of trial counsel, Petitioner again points to *Martinez*, 566 U.S. at 1. The Court finds that *Martinez* does not apply to ground three, however, because *Martinez* applies only to "substantial" claims of ineffective assistance at trial. 566 U.S. at 14. This means the "prisoner must demonstrate that the claim has some merit." *Id.* For the reasons set forth in section II.B.3. below, Petitioner's claim for ineffective assistance of trial

counsel lacks merit. As such, the Court finds no cause to excuse the procedural default of ground three.

## 2. Prejudice

The Court likewise finds no "prejudice" sufficient to excuse the defaults of grounds one, two, or three. To show prejudice, a petitioner must demonstrate that the "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (quoting *Murray*, 477 U.S. at 494). Stated another way, prejudice means a reasonable probability exists that, but for the constitutional violations, the result of the trial would have been different. *See United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner cannot meet that burden here. As to the affidavit of J.B., Petitioner argues the outcome of the trial would have been different had the jury learned that J.B. expressed doubts about her identification of Petitioner (DE 13 at 10). The Court finds this argument unpersuasive, considering the following:

- J.B. expressed no hesitation as to identifying the shooter at trial (T. 393).

- The detective who administered the photo line-up to J.B. testified that J.B. identified Petitioner as the shooter "within five seconds" (T. 526-27). J.B also testified that the officer did not hint or otherwise give J.B. clues prior to the line-up. (T. 376).

- J.B. gave a statement to police six days after the shooting (R. 38-50). In the statement, she was emphatic about the accuracy of identifying Petitioner as the shooter (R. at 43-47). J.B. told police she had "no doubt in [her] mind" about seeing Petitioner "walk up" and "shoot at this guy," one of the victims (R. at 47). Specifically, she said, "the parking lot was pretty well lit where the altercation happened at. It was pretty well lit. . . . No doubt in my mind. No doubt in my mind about seeing him walk up and clearly just shoot at this guy at pretty, at pretty close range, too, to shoot at him" (R. at 47). Had J.B. expressed doubts during her testimony about her identification of Petitioner, she would have been subject to cross-examination with this prior statement.

8

- Also, and regardless of any doubts reflected in J.B.'s affidavit, J.B.'s trial testimony was clear and unequivocal that the shooter was a tall, thin-built, African American male with a low haircut, who wore a red shirt, and got into the passenger side of a red BMW after the shooting (T. 367, 370, 372). This description matched Petitioner (T. 941, 944-47).

- In addition to J.B., one other trial witness testified that a tall, slender, African American man with short hair, wearing a red shirt had a gun in his hand and got into a red BMW after the shooting (T. 440-42).

- In addition, police officers at the scene testified that numerous witnesses identified the shooter as a tall, thin-built, African American male with a low haircut, who got into the passenger side of a red BMW after the shooting (T. 532- 533, 548-50).

- The owner of the red BMW testified that the man who got into his car after the shooting was Petitioner (T. 754, 803).

- Trial counsel attempted to impeach the State's eyewitness several times on many of the above points (T. at 395, 397-400), but the jury nevertheless accepted their testimony.

- At trial, the defense argued, among other theories, a theory of "defense of others," the premise of which was that Petitioner committed the act but was legally justified in doing so (T. 346, 898, 957, 959, 964, 968-69, 972, 987).

As to the affidavit of A.O., Petitioner likewise argues the outcome of the trial would have been different had the jury learned that A.O. saw a "stocky" male with "long dreads hanging down his back" at the scene of the fight with a gun in his hand "near the guy who was laying on the ground" (R. at 173). The Court disagrees. At the outset, the mere fact that A.O. allegedly saw another person with a gun does not negate Petitioner's role as a shooter. Moreover, to the extent A.O.'s affidavit can be read to negate Petitioner's role altogether, the affidavit conflicts with the other evidence offered at trial, including the testimony of numerous witnesses, who agreed the shooter was a tall, thin-built, African American male with a low haircut, who wore a red shirt, and got into the passenger side of a red BMW after the shooting – a description that matched Petitioner (T. 367, 370, 383, 441-42, 512, 532-33, 548-50). Also, none of the evidence at trial pointed to a

9

description of a shooter that matched A.O.'s description, i.e., a "stocky" male with "long dreads hanging down his back."

In sum, the Court finds Petitioner cannot meet his burden to show a reasonable probability exists that, but for the alleged constitutional errors in grounds one, two, and/or three, the outcome of the trial would have been different. For all of these reasons, the Court finds Petitioner cannot show "prejudice" under *Coleman* and its progeny.

### 3. Fundamental Miscarriage of Justice

In the absence of "cause and prejudice," a habeas petitioner can also receive relief from a procedural default by showing a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 729-30. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default. … This exception is exceedingly narrow in scope, however, and requires proof of actual innocence, not just legal innocence.

*Ward v Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (cleaned up). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Additionally, "[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence will be summarily rejected. *Schlup*, 513 U.S. at 324.

The Court finds the miscarriage-of-justice exception does not apply here. For all the reasons set forth above in section II.A.2., Petitioner has not shown this to be one of the rare and

10

extraordinary cases where a constitutional violation has "probably resulted in the conviction of one who is actually innocent." *See Ward*, 592 F.3d at 1157. As such, the Court finds no basis to excuse Petitioner's procedural default.

### B.      Merits

The Court now turns to the merits, addressing each ground for relief in turn.

#### 1.      Ground One – Lack of Postconviction Evidentiary Hearing

As to ground one, Petitioner alleges the state courts violated his clearly established Fifth and Fourteenth Amendment due process rights by summarily denying his Rule 3.850 motion for postconviction relief without the benefit of an evidentiary hearing (DE 1 at 7-8). This argument presents no cognizable federal claim. As the Eleventh Circuit has stated, "it is 'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief." *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009). Instead, such challenges involve state-law issues and procedures attendant to postconviction motions. "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Id.* (citing *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir.1992)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The Petition should be denied as to ground one.[2]

---

[2] As part of ground one, Petitioner also argues the failure to afford him a postconviction evidentiary hearing resulted in a state court "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" within the meaning of 28 U.S.C. § 2254(d) (DE 1 at 7). Because Petitioner's moving papers fail to explain this argument, the Court rejects it.

### 2. Ground Two – *Brady* Violation

As to ground two, Petitioner alleges that state prosecutors violated his clearly established Fifth and Fourteenth Amendment due process rights by failing to disclose exculpatory information prior to trial, namely, the fact that J.B. had expressed doubts as to the accuracy of her identification of Petitioner (DE 1 at 9-10). In *Brady v. Maryland*, 373 U.S. 83, 87 (1972), the Supreme Court recognized that a due process violation occurs when prosecutors fail to disclose material exculpatory information to the defense upon request. This includes impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is "material" only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682; *see also United States v. Blasco*, 702 F.2d 1315, 1328 (11th Cir. 1983) ("[T]he suppressed evidence is material only if its introduction probably would have resulted in acquittal."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

The Court finds no *Brady* violation here. Given the evidence identified in section II.A.2. above, the Court finds the allegedly suppressed information was not "material," meaning that it does not give rise to a reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different. *See Moore v. Illinois*, 408 U.S. 786, 795-96 (1972) (finding no *Brady* violation because the evidence withheld was not "material"); *Maddox v. Montgomery*, 718 F.2d 1033, 1036 (11th Cir. 1983) (same). The Petition should be denied as to ground two.

### 3. Ground Three – Ineffective Assistance of Trial Counsel

As to ground three, Petitioner alleges he received ineffective assistance of trial counsel, in violation of his clearly established Sixth Amendment rights, because his trial counsel failed to

depose state witnesses and failed to perform an adequate factual investigation of the case (DE 1 at 10-11). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-part test for determining ineffective assistance of counsel. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* Second, a petitioner must show that this deficient performance prejudiced the defense. *Id.* To satisfy this test, the defendant must show a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. Both prongs of the test must be satisfied. *Id.* at 687. Moreover, courts "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (cleaned up).

The Court finds Petitioner cannot meet either prong of the *Strickland* test. As to the contention that trial counsel rendered deficient performance by failing to depose all of the State's witnesses, *Strickland* instructs reviewing courts to give "a heavy measure of deference to counsel's judgments." 466 U.S. at 689. Here, trial counsel repeatedly made known that he deliberately chose not to depose State witnesses as a matter of trial strategy and judgment:

> I don't want to pre-cross [the witness], I want to catch him in the lies on the stand. Why do I have to prep the witness before we do it in front of the jury?
>
> …
>
> I'd rather make my record in the trial. … I don't want to prepare this witness, who is a State witness, antagonistic to the Defense, who we intentionally did not take a deposition of, so that we could catch him by surprise. Now [the court] want[s] me to reveal the defense before the jury comes in.
>
> …
>
> One of the things that the jury will be instructed is it's not just what the witness says, it's also their demeanor on the stand, and I want the jury to see their demeanor

> on the stand when they're asked the questions for the first time. [The court is] depriving [the defendant] of his right to a fair trial if you make me pre-cross everybody, or any witness, before the jury comes in.

(T. at 318-19).

> Why would I take his depo? I don't have to take depos. I choose and pick who I take depos of. I took depos of cops in this case. I didn't take a depo of any civilian in this case.

(T. 466).

The Court finds trial counsel's strategy choice was well within the range of professionally reasonable judgments. *See Hannon v. State,* 941 So. 2d 1109, 1120 (Fla. 2006) (finding trial counsel's decision not to depose witness reasonable, where counsel testified he wanted to "use the element of total surprise in questioning [witness]" and wanted to prevent the State from "using the deposition to better prepare [the witness]" for trial); *Strickland*, 466 U.S. at 699 ("Counsel's strategy choice was well within the range of professionally reasonable judgments, and the decision not to seek more character or psychological evidence than was already in hand was likewise reasonable.").

Next, Petitioner claims trial counsel rendered deficient performance by failing to conduct additional factual investigation (and, specifically, failing to locate witness A.O.). The Court disagrees. The affidavit of A.O. made clear she did not speak to police following the shooting and did not want to come forward because she was afraid to do so (R. at 178). Trial counsel cannot be deemed objectively unreasonable for failing to locate a witness who did not want to be found. *See Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) ("[T]o be effective[,] a lawyer is not required to pursue every path until it bears fruit or until all hope withers.") (cleaned up); *Denis v. United States*, No. 05-23089-civ, 2009 WL 1563543, at *16 (S.D. Fla. June 2, 2009) ("The reasonableness of the investigation is determined by the information conveyed to counsel by his

client, as well as other information in his possession, recognizing the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources.").

Finally, even assuming Petitioner could satisfy the first prong of the *Strickland* test, he nevertheless fails under the second prong. Given the evidence identified in section II.A.2. above, the Court finds Petitioner cannot show a reasonable probability exists that, but for counsel's alleged deficiencies, the jury would have acquitted him. *See Thompson v. Vanihel*, 998 F.3d 762, 768 (7th Cir. 2021) (finding no *Strickland* violation based on failure to satisfy second prong); *Wingate v. United States*, 969 F.3d 251, 255-57 (6th Cir. 2020) (same). The Petition should be denied on the third ground.

## III. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned **RECOMMENDS** that the Petition (DE 1) be **DENIED**. Further, the undersigned finds no substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (a prisoner seeking to appeal a district court's final order denying a section 2254 habeas corpus petition has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability by meeting the *Slack* test). Therefore, the undersigned respectfully **RECOMMENDS** that no certificate of appealability be issued.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions

contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1*; see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE and RECOMMENDED** in Chambers at West Palm Beach in the Southern District of Florida, this 18th day of November 2022.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE