UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 20-62062-CIV-CANNON/McCabe

ANTWAN WALKER,

    Petitioner,

v.

DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

**ORDER ACCEPTING REPORT AND RECOMMENDATION [ECF No. 15]**

**THIS CAUSE** comes before the Court upon Petitioner's Section 2254 Habeas Petition [ECF No. 1]. On November 18, 2022, following a referral order [ECF No. 14], Magistrate Judge Ryon M. McCabe issued a report ("Report") recommending that the Petition be denied because Petitioner failed to fully exhaust his claims and because the claims fail on the merits [ECF No. 15]. Petitioner filed objections to the Report, arguing that (1) Judge McCabe improperly determined that his claims were not fully exhausted and/or that an exception to the exhaustion requirement did not apply; and (2) Judge McCabe erred in determining that Petitioner's claims fail on the merits [ECF No. 20]. Respondent filed a Response in Opposition to Petitioner's Objections [ECF No. 22]. The Court has reviewed the Petition [ECF No. 1] and the full record [ECF Nos. 6, 13, 15, 20, 22]. Upon a *de novo* review, the Court **ACCEPTS** the Report [ECF No. 28]. The Petition [ECF No. 1] is **DISMISSED** as procedurally barred and alternatively **DENIED** on the merits.

CASE NO. 20-62062-CIV-CANNON/McCabe

## BACKGROUND

On May 13, 2020, a Florida grand jury indicted Petitioner on two counts of first-degree murder stemming from a shooting in a nightclub parking lot that left two individuals dead [ECF No. 7-1 pp. 13, 16]. After a five-day trial in July 2015, a jury found Petitioner guilty of one count of first-degree murder and one count of second-degree murder [ECF No. 7-1 pp. 52–53]. The trial court sentenced Petitioner to life in prison on August 24, 2015 [ECF No. 7-1 pp. 54–62].[1]

On September 1, 2015, Petitioner directly appealed his conviction and sentence to Florida's Fourth District Court of Appeal ("DCA"), raising the following two arguments: (1) the trial court erred by not allowing Petitioner to reference in opening statement, or to question witnesses about, a silver gun that was found within two miles of the crime scene and within four hours after the shooting occurred; and (2) the trial court erred by refusing to allow Petitioner to cross examine a witness on facts that allegedly supported his "defense of others" theory [ECF No. 7-1 pp. 79–101]. On May 25, 2017, the Fourth DCA summarily affirmed Petitioner's conviction and sentence in a per curiam opinion [ECF No. 7-1 p. 153]. *See also Walker v. State*, 226 So. 3d 846 (Fla. Dist. Ct. App. 2017). The Fourth DCA issued its mandate on June 23, 2017 [ECF No. 7-1 p. 155].

Petitioner did not seek further review with the Florida Supreme Court or with the United States Supreme Court [ECF No. 1 p. 3]. Thus, Petitioner's conviction and sentence became final on August 23, 2017.

On July 28, 2017, Petitioner filed a motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure [ECF No. 7-1 pp. 157–64]. In accordance with the trial court's order denying the Rule 3.850 motion without prejudice [ECF No. 7-1 p. 170], Petitioner filed an Amended Motion on November 17, 2017, arguing that he was entitled to a new trial based

---

[1] The trial court was the Seventeenth Judicial Circuit in and for Broward County.

on newly discovered evidence in the form of two witness affidavits [ECF No. 7-1 pp. 172–75; ECF No. 1-2]. The first affidavit, signed by one of the State's key witnesses at the trial (hereafter "J.B."), attested that J.B. had previously expressed doubts to law enforcement and the prosecution about her identification of Petitioner as the shooter [ECF No. 1-3; ECF No. 7-1 pp. 176–77]. The second affidavit, signed by a newly discovered witness (hereafter "A.O."), asserted that A.O. witnessed the events in the parking lot leading up to the shooting, and that she saw an individual with different physical characteristics than Petitioner with a gun in his hand [ECF No. 1-4; ECF No. 7-1 p. 178]. The State's Response to the Rule 3.850 motion argued that the new evidence would be unlikely to result in an acquittal because, *inter alia*, the new evidence contradicted other substantial evidence of guilt offered at trial [ECF No. 7-1 pp. 181–84]. On December 7, 2018, the trial court denied Petitioner's Rule 3.850 motion "for reasons set forth in the State's Response," without holding an evidentiary hearing [ECF No. 7-1 p. 186].

Petitioner timely appealed the trial court's order denying his Rule 3.850 motion [ECF No. 7-1 pp. 196–224]. As relevant here, Petitioner did not argue that the trial court's failure to hold an evidentiary hearing on his Rule 3.850 motion violated his right to due process under the Fifth or Fourteenth Amendment to the United States Constitution [ECF No. 7-1 pp. 196–224]. On September 12, 2019, the Fourth DCA issued a per curiam opinion affirming the trial court's denial of Petitioner's Rule 3.850 motion [ECF No. 7-1 p. 262]. *See also Walker v. State*, 279 So. 3d 713 (Fla. Dist. Ct. App. 2019). Petitioner did not seek further review from the Florida Supreme Court or the United States Supreme Court [ECF No. 1 p. 6]. The Fourth DCA issued its mandate on October 11, 2019 [ECF No. 264], and Petitioner filed the instant Petition on October 9, 2020 [ECF No. 1].

The instant Petition raises the following three grounds for relief:

1. **Ground 1**: The trial court violated Petitioner's clearly established due process rights under the Fifth and Fourteenth Amendments by summarily denying his Rule 3.850 motion without the benefit of an evidentiary hearing [ECF No. 1 pp. 7–9];[2]

2. **Ground 2**: State prosecutors violated Petitioner's clearly established rights under the Fifth and Fourteenth Amendments by failing to disclose exculpatory information prior to trial, specifically, the fact that J.B. had expressed doubts about her eyewitness identification of Petitioner, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) [ECF No. 1 pp. 9–10]; and

3. **Ground 3**: Petitioner received ineffective assistance of trial counsel, in violation of his clearly established right to competent counsel under the Sixth Amendment, because his trial counsel failed to depose State witnesses and failed to perform an adequate factual investigation of the case [ECF No. 1 pp. 10–13].

In the Report, Judge McCabe determined that Petitioner failed to exhaust all three grounds by not presenting them in State court [ECF No. 15 pp. 5–6]. Judge McCabe also determined that all three grounds for relief are now procedurally barred from further State review—and as a result federal habeas review—because Petitioner cannot show either "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default [ECF No. 15 pp. 6–11 (citing *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("When it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless judicial ping-pong and just treat those claims now barred by state law as no basis for federal habeas relief."))]. Finally, Judge McCabe concluded that, even if Plaintiff had exhausted his arguments in State court, each ground for relief fails on the merits in any event [ECF No. 15 pp. 11–15].

---

[2] Although Ground 1 is captioned broadly in the Petition as "the Circuit Court's Summary Denial of Petitioner's 3.850 Motion (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law and/or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" [ECF No. 1 p. 7], the substance of Ground 1 is the claim that the trial court should have held an evidentiary hearing before ruling on his 3.850 motion [*see* ECF No. 1 pp. 7–9].

4

Petitioner timely filed objections to Judge McCabe's Report [ECF No. 20]. Although Petitioner concedes that he failed to exhaust Grounds 2 and 3 in State court, he argues that he satisfied the exhaustion requirement as to Ground 1 and can show both cause and prejudice to excuse any procedural default [ECF No. 20]. Petitioner does not directly address the Report's recommendation to deny the Petition on the merits but references the merits of his claims in connection with the prejudice prong of the cause-and-prejudice analysis. The Report is ripe for adjudication [ECF Nos. 15, 20, 22].

## LEGAL STANDARDS

### A. Rule 72(b) of the Federal Rules of Civil Procedure

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews *de novo* those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed *de novo*, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

### B. Exhaustion and Procedural Default

Section 2254 provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on

5

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not[, however,] be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this exhaustion requirement, petitioners must "fairly present every issue raised in his federal petition in the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (citing *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (per curiam)). "[T]o exhaust state remedies fully the petition must make the state court aware that the claims asserted present federal constitutional issues." *Snowden* 135 F.3d at 735 (11th Cir. 1998). Although a petitioner need not "cite book and verse on the federal constitution," *Duncan v. Henry*, 513 U.S. 364, 365 (1995), he nevertheless must alert the state court "to the federal nature of the claim," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). This requires "that petitioners present their claims to the state courts such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 277 (1971)). Furthermore, "'[t]he ground relied upon must be presented face-up and squarely [to the State court]; the federal question must be plainly defined,'" and "'[o]blique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *Id.* at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

When a petitioner does not exhaust his claims in State court, federal courts "apply the familiar principle that federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1306 (11th Cir. 1999) (citing

*Snowden*, 135 F.3d at 737). Such claims are procedurally barred from federal habeas review unless Petitioner can show either "cause and prejudice" or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

    **i.**    **Cause**

"'Cause requires a showing of some external impediment preventing counsel from constructing or raising a claim.'" *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)) (ellipses omitted). "The requisite 'cause' element is not precisely defined, but ordinarily requires a showing that 'some objective factor external to the defense impeded counsel's efforts' to construct or raise a claim." *Roberts v. Singletary*, 794 F. Supp. 1106, 1123 (S.D. Fla. 1992) (quoting *Murray*, 477 U.S. at 478). Some examples of objective factors that qualify include: (1) interference by officials that makes compliance impracticable; (2) a showing that the factual or legal basis for a claim was not reasonably available to counsel; and (3) constitutionally ineffective assistance of counsel. *See Murray*, 477 U.S. at 478. Ineffective assistance of postconviction counsel, however, generally cannot satisfy the "cause" requirement because the Sixth Amendment does not guarantee the right to post conviction counsel. *See Coleman*, 501 U.S. at 752; *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) ("[N]egligence on the part of a prisoner's post-conviction counsel does not constitute cause or excuse the procedural default of a claim in state court."). There is a narrow exception to the general rule that ineffective assistance of postconviction counsel cannot satisfy the required cause element. This narrow exception exists where the deficient performance of postconviction counsel results in a prisoner's procedural default of an underlying claim for ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1 (2012). However, the *Martinez* exception applies only when a prisoner can show "that the underlying ineffective-assistance-of-trial-counsel claims is a

substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

### ii. Prejudice

To show actual prejudice, a petitioner must show that "the errors at trial actually and substantially disadvantages his defense so that he was denied fundamental fairness." *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (quoting *Murray*, 477 U.S. at 494). Put another way, prejudice means a reasonable probability exists that, but for the constitutional violations, the result of the trial would have been different. *See United States v. Frady*, 456 U.S. 152, 170 (1982).

### iii. Actual Innocence / Fundamental Miscarriage of Justice

"[I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). "'In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" *Id.* (quoting *Carrier*, 477 U.S. at 496). "'This exception is exceedingly narrow in scope', however, and requires proof of actual innocence, not just legal innocence." *Id.* (quoting *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001)). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson*, 256 F.3d at 1171 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## DISCUSSION

Judge McCabe's Report is well-reasoned and correct. Petitioner failed to exhaust all three grounds for relief in State court and has not established either cause and prejudice or a fundamental

miscarriage of justice sufficient to excuse his procedural default. Moreover, even if Petitioner had exhausted all three grounds in State court, they nevertheless fail on the merits.

I. **Ground 1 – Failure to Hold Evidentiary Hearing on Rule 3.850 Motion**

   **A. Exhaustion**

Petitioner asserts that "his filing of a Motion for Post-Conviction Relief based on Newly Discovered Evidence" satisfies the exhaustion requirement as to Ground 1 [ECF No. 20 p. 2]. The court is unconvinced. As Judge McCabe correctly determined, Petitioner failed to fairly present to the State court the issue of whether the State court violated his Fourth or Fifth Amendment rights in failing to hold an evidentiary hearing on his Rule 3.850 postconviction motion [ECF No. 20 pp. 5–6]. Indeed, although Petitioner did argue in his appeal to the 4th DCA that the trial court erred in denying the 3.850 motion without holding an evidentiary hearing, nowhere in the 3.850 motion or in the appeal of the denial thereof did Petitioner make any reference to his Fifth and Fourteenth Amendment due process rights being violated by the trial court's summary denial of his Rule 3.850 motion without an evidentiary hearing [*see* ECF 7-1 pp. 172–79, 196–224, 242–60]. Accordingly, Petitioner did not "fairly present" to the State courts the issue raised in Ground 1 of his Petition—that the trial court violated Petitioner's Fifth and Fourteenth Amendment rights by failing to hold a post-conviction evidentiary hearing on his Rule 3.850 motion. Ground 1 of the Petition is procedurally barred unless Petitioner can show either (1) cause and prejudice; or (2) a fundamental miscarriage of justice as relates to Ground 1.

   **B. Cause and Prejudice**

In his objections to the Report, Petitioner asserts that he can show cause because "*Martinez* applies to all three grounds raised" [ECF No. 20 p. 10]. Petitioner does not expound on that point as relates to Ground 1, discussing *Martinez* only in the context of Grounds 2 and 3 [*see* ECF No.

20 pp. 10–13]. In any event, "[b]y its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel." *Gore*, 720 F.3d at 816 (11th Cir. 2013). Ground 1 of the Petition does not relate to ineffective assistance of trial counsel and instead relates to the trial court's decision not to hold an evidentiary hearing in ruling on Petitioner's Rule 3.850 motion [*see* ECF No. 1 pp. 7–9]. Accordingly, Petitioner's reliance on *Martinez* is misplaced; he cannot establish cause as relates to Ground 1. And, "[b]ecause *both* cause *and* prejudice must be shown to excuse a procedural default," *McCoy v. Newsome*, 953 F.2d 1252, 1260 (11th Cir. 1992) (italics in original), the Court need not evaluate whether Petitioner can establish prejudice.

### C. Actual Innocence / Fundamental Miscarriage of Justice

Judge McCabe properly determined—based on a careful review of the record—that no fundamental miscarriage of justice occurred in this case as to any of the three grounds raised in the Petition [ECF No. 15 pp. 10–11]. Judge McCabe made this determination because there was a substantial amount of evidence introduced at trial that would lead a reasonable juror to convict Petitioner, including J.B.'s identification of Petitioner as the shooter, an identification made with zero hesitation [ECF No. 15 pp. 8–9; ECF No. 8-1 p. 393]. This identification was corroborated by multiple witnesses who testified as to the physical description of the shooter—which matched that of Petitioner—and a description of the vehicle in which the shooter fled [ECF No. 8-1 pp. 367–72, 440–42, 532–50]. The owner of that vehicle also testified that Petitioner was the individual who entered his vehicle [ECF No. 8-1 pp. 754, 803]. For these reasons, and for the reasons more fully described in the Report with citations to the trial record, Judge McCabe correctly rejected Petitioner's argument that the trial would have turned out differently had the jury learned that J.B.

expressed doubts about her identification of Petitioner [ECF No. 15 pp. 8–9].  As to A.O.'s affidavit, Judge McCabe determined that "the mere fact that A.O. allegedly saw another person with a gun does not negate Petitioner's role as a shooter," particularly when combined with the other evidence adduced at trial linking Petitioner as the shooter and the absence of any evidence connecting an individual matching A.O.'s description as the shooter [ECF No. 15 pp. 9–10 (summarizing evidence)].

Petitioner argues in his objections that "Petitioner has declared his innocence of these charges," and that "[t]he Constitutional errors cited above caused him to be wrongfully convicted" [ECF No. 20 p. 6].  These assertions are insufficient to excuse his procedural default or to raise doubt about Petitioner's guilt.  Moreover, despite Petitioner's statements to the contrary [ECF No. 20 pp. 15–17], the J.B. and A.O. affidavits do not establish Petitioner's innocence as to either his first-degree or second-degree murder convictions.  Petitioner claims that the State postconviction court and Judge McCabe improperly "weighed the strength of Petitioner's new evidence [the affidavits] in a vacuum," thus "depriv[ing] Petitioner of a fair resolution of his claims" [ECF No. 20 p. 16].  According to Petitioner, his entire conviction was predicated solely on J.B.'s identification of him as the shooter and Petitioner has now recanted her identification of Petitioner [ECF No. 20 p. 16].  The Court disagrees.  Judge McCabe properly concluded, based upon a full review of the trial evidence, that the A.O. affidavit—which indicated that A.O. saw another person with a gun on the night in question—and J.B.'s assertion that she had expressed doubt about her identification of Petitioner as the shooter did not establish that Petitioner was actually innocent of committing first and second-degree murder.  Furthermore, despite Petitioner's argument to the contrary, the J.B. affidavit does not recant J.B.'s identification of Petitioner.  While the affidavit does indicate that J.B. was not and is not "100% sure" of her identification of

Petitioner as the shooter, nowhere does she say that her identification was wrong or that she saw someone else carry out the shooting [*see* ECF No. 1-3]. This expression of doubt, made seven years after witnessing the shooting and identifying Petitioner without hesitation at trial, is insufficient to negate the jury's verdict in the context of the evidence presented at trial. In the end, this is not the extraordinary case where a constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Ward*, 592 F.3d at 1157.

Because Petitioner cannot establish cause and prejudice as to Ground 1 or that a fundamental miscarriage of justice occurred in this case, the Court cannot excuse his procedural default as to Ground 1.

**D. Merits**

Even if Ground 1 were not procedurally barred, it fails on the merits. The Eleventh Circuit has made clear that "it is 'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief." *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009). This is because such a challenge involves only state-law issues, without implicating a question "of a constitutional nature." *Id.* The trial court's failure to hold an evidentiary hearing on Petitioner's Rule 3.850 Motion cannot form the basis of a cognizable claim for habeas relief.

**II. Ground 2 – *Brady* Violation**

Petitioner concedes that he did not exhaust Grounds 2 or 3 in State court [ECF No. 20 p. 9 ("Petitioner has conceded that grounds two and three were not raised in his original 3.850 Motion and are therefore procedurally barred.")]. Instead, Petitioner argues that he can establish cause and prejudice to excuse his procedural default as to Ground 2, because "[t]he principle in *Martinez*, that cause can be established if post-conviction counsel failed to raise a Constitutional violation in

the underlying State Court proceedings should apply equally to a Sixth Amendment and a Fifth Amendment claim [like his *Brady* claim in Ground 2]" [ECF No. 20 pp. 10–11]. As discussed in Section I.B. above, however, the *Martinez* exception to a procedural default is a narrow one that, by its own terms, is limited to cases where a claim for ineffective assistance of trial counsel is procedurally barred due to the ineffective assistance of post-conviction counsel. *Gore*, 720 F.3d at 816 (11th Cir. 2013). Ground 2 does not raise a claim of ineffective assistance of trial counsel; it is a *Brady* claim [ECF No. 1 pp. 9–10]. The narrow *Martinez* exception therefore does not apply as to Ground 2. And for the same reasons discussed in Section I.C. above, Petitioner has not established a fundamental miscarriage of justice as relates to the prosecution's alleged failure to notify Petitioner about J.B.'s doubts regarding her identification of Petitioner as the shooter. Without any applicable exception, Ground 2 of the Petition is procedurally barred from federal habeas review.

Even if the Court could excuse Petitioner's procedural default, which it cannot, Ground 2 of the Petition based on an alleged *Brady* violation fails on the merits. In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to actual punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87. This includes impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). However, evidence is "material" only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682; *see also United States v. Blasco*, 702 F.2d 1315, 1328 (11th Cir. 1983) ("[T]he suppressed evidence is material only if its introduction probably would have resulted in acquittal.") "A reasonable

probability is a probability sufficient to undermine the confidence in the outcome." *Bagley*, 473 U.S. at 682.

Here, Judge McCabe correctly determined that no *Brady* violation occurred because the alleged suppression of J.B.'s doubt as to her identification of Petitioner was not material in light the evidence introduced at trial. In other words, there was not a reasonable probability that the result of the proceeding would have been different had his trial counsel known of J.B.'s doubt [ECF No. 15 pp. 8–10, 12]. Upon full review, the Court agrees with Judge McCabe's assessment. Petitioner's objections do not alter that determination or undermine confidence in the verdict.

### III. Ground 3 – Ineffective Assistance of Counsel

As discussed above, Petitioner concedes that he did not exhaust Ground 3 of his Petition. Nevertheless, he asserts that *Martinez* applies to Ground 3 of his Petition, again urging the Court to excuse his acknowledged procedural default [ECF No. 20 pp. 10–11]. The Court disagrees. Petitioner can rely on *Martinez* to excuse his procedural default as to Ground 3 only if his ineffective assistance of trial counsel claim has merit. It does not, as discussed below, leaving Petitioner with no cause to excuse his procedural default.

The Supreme Court has established a two-part test for determining ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that his trial counsel's performance fell below an objective standard of reasonableness such that his trial counsel "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, Petitioner "must show that [his trial counsel's] deficient performance prejudiced his defense." *Id.* To satisfy this test, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court has instructed courts to give "a heavy measure of deference to

counsel's judgments." *Id.* at 689. This requires courts to "indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).

Petitioner alleges that his trial counsel was ineffective for two reasons. First, he asserts that his trial counsel was deficient for failing to depose certain State witnesses, including J.B. [ECF No. 1 pp. 10–11]. Second, he argues that his trial counsel did not conduct a thorough investigation, and that if he had, "he might have located [A.O.]" [ECF No. 1 p. 10]. Neither of these alleged deficiencies shows that trial counsel's performance was objectively unreasonable. As to trial counsel's decision not to depose J.B., Petitioner's trial counsel repeatedly told the trial court that he was making a strategic decision not to question J.B. and other civilian State witnesses pre-trial in an effort to catch them in lies on the stand.[3] As Judge McCabe correctly points out, this is a strategy choice that is well within the range of professional reasonable judgments. *Hannon v. State*, 941 So. 2d 1109, 1120 (Fla. 2006) (determining that trial counsel's decision not to depose a witness was reasonable under *Strickland*, where counsel "wanted to use the element of total surprise in questioning" the witness and wished to prevent the prosecution from "using the deposition to better prepare [the witness] for his trial testimony"). The Court agrees with the Report that Petitioner's trial counsel was not objectively unreasonable in making the strategic

---

[3] [ECF No. 8-1 pp. 318–19 ("I want to catch [the witness] in lies on the stand. Why do I have to prep the witness before we do it in front of the jury?"; "I don't want to prepare the witness, who is a State witness, antagonistic to the Defense, who we intentionally did not take a deposition of, so that we could catch him by surprise"; "I want the jury to see their demeanor on the stand when they're asked the questions for the first time."); ECF No. 8-1 p. 466 ("I choose and pick who I take depos of. I took depos of cops in this case. I didn't take a depo of any civilian in this case.")].

decision not to depose certain State witnesses before trial, including J.B. Petitioner's objections reiterating his position on this issue do not call the Report's determination into question.

As to Petitioner's argument that trial counsel failed to locate A.O. because he did not conduct an adequate investigation, "to be effective[,] a lawyer is not required to 'pursue every path until it bears fruit or until all hope withers.'" *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) (quoting *Foster v. Dugger*, 823 F.2d 402, 405 (11th Cir. 1987)). Accordingly, Petitioner's trial counsel's performance cannot be deemed objectively unreasonable for failing to locate A.O. when, by A.O.'s own admission, she did not want to be found and never told anyone about witnessing the events surrounding the shooting [ECF No. 1-4 ("No one asked me what I saw, and I didn't talk about it because I was scared about what I saw, and I didn't want to put myself in danger.")]. Thus, Petitioner cannot satisfy the first prong of *Strickland* because he has not pointed to any actions by his trial counsel that were objectively unreasonable.

Because Petitioner's ineffective assistance of counsel fails on the merits, he cannot rely on *Martinez* to establish cause to excuse his failure to exhaust Ground 3 of his Petition. Nor has Petitioner established actual innocence, for the reasons discussed in Section I.C. above.

## IV.     Request to Abate

In a final effort to save his unexhausted (admittedly procedurally barred) claims,[4] Petitioner urges the Court to "issue a stay and abeyance and permit him to exhaust those issues" by filing a successive Rule 3.850 Motion in Florida State court [ECF No. 20 pp. 11–13]. Notably, Petitioner never made this request in his Petition [ECF No. 1] or Reply brief [ECF No. 13]. *Cf. Williams*, 557 F.3d at 1289–90, 1292 (affirming discretion to decline to review arguments raised for the first

---

[4] [ECF No. 20 p. 9 ("Petitioner has conceded that grounds two and three were not raised in his original 3.850 Motion and are therefore procedurally barred.")].

time in objections to magistrate's report). The Court denies this request because any successive Rule 3.850 motion will fail.

Rule 3.850(h)(2) of the Florida Rules of Criminal Procedure allows a person convicted of a crime to file a successive Rule 3.850 in "extraordinary" circumstances. Fla. R. Crim. P. 3.850(h)(2). The Florida Supreme Court has held that "[a] successive motion may be dismissed if it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the failure to raise those issues in a prior motion constitutes an abuse of process." *Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992). This is a high bar, and to overcome it, "a movant must allege that the grounds asserted were not known and could not have been known to him at the time of the earlier motion." *Id.* (citing *Christopher v. State*, 489 So. 2d 22, 24 (Fla. 1986)). Here, by Petitioner's own admission, Petitioner knew about the grounds for relief that would be the subject of a successive Rule 3.850 motion [ECF No. 13 pp. 4–5 (stating that despite there being "clear" evidence of a *Brady* violation and ineffective assistance of counsel, Petitioner "raised only the issue of newly discovered evidence without allusion to his federal claim[s]" in filing his initial Rule 3.850 motion)]. Thus, Petitioner cannot overcome the high bar to succeed on a successive Rule 3.850 motion. *See Phillips v. State*, No. 18-14056, 2019 WL 4785559, at *5 (11th Cir. Apr. 19, 2019) (affirming district court's ruling that any successive Rule 3.850 motion would fail under *Foster* because petitioner had not alleged that he did not know of the grounds for relief when he filed either his direct appeal or Rule 3.850 motion); *see also Feimster v. Sec'y, Dep't of Corr.*, No. 17-CV-2302, 2018 WL 11247793, at *3 (M.D. Fla. May 23, 2018).

V. **Certificate of Appealability**

A prisoner seeking to appeal a district court's final order denying or dismissing a petition

17

for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Reasonable jurists would not find the Court's rejection of Petitioner's claims on the merits debatable or wrong. Nor would reasonable jurists find debatable the correctness of the Court's procedural ruling on the failure to exhaust. No certificate of appealability shall issue.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Report [ECF No. 15] is **ACCEPTED.**

2. Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DISMISSED** as procedurally barred and **DENIED** on the merits in any event.

3. No certificate of appealability shall issue.

4. Final Judgment to follow.

5. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 2nd day of August 2023.

_____
AILEEN M. CANNON
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record